**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JILL McMANUS NEWTAL,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-9185-NKL |
| TRACY ALDEN,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-9186-NKL |
| MICHAEL SPELLMAN,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-9188-NKL |
| DELLA GRAYBEAL,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-9189-NKL |

| | |
|---|---|
| JOSEPH KENNEY, | |
| Plaintiff, | |
| v. | Case No. 4:21-9190-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |
| BETH RUDOLPH, | |
| Plaintiff, | |
| v. | Case No. 4:21-9191-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |
| MARGARET PICHELMAN GOFORTH, | |
| Plaintiff, | |
| v. | Case No. 4:21-9192-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |
| JENNIFER MCCORD, | |
| Plaintiff, | |
| v. | Case No. 4:21-9193-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |

| | |
|---|---|
| LESLIE RILEY,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-9194-NKL |
| PARMINDERJIT SINGH,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-9195-NKL |
| MARTHA SABIN,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-9196-NKL |
| STEPHANIE STEVENS,<br><br>        Plaintiff,<br><br>v.<br><br>DST SYSTEMS, INC.,<br><br>        Defendant. | Case No. 4:21-9197-NKL |

| | |
|---|---|
| KATHLEEN SARETTE, | |
| Plaintiff, | |
| v. | Case No. 4:21-9198-NKL |
| DST SYSTEMS, INC., | |
| Defendant. | |

**ORDER**

Each Plaintiff in the above-captioned actions has moved to confirm an arbitration award. Doc. 1. Defendant DST Systems, Inc. opposes the motion, arguing that Plaintiff's claims were not arbitrable and that Plaintiff is part of a mandatory class certified by the District Court for the Southern District of New York.

DST paints the task before the Court as one that is complex and merits forbearance, but in truth, the obligation of the Court is plain and unavoidable. The Federal Arbitration Act ("FAA") compels the Court to confirm the award in the absence of specified circumstances. As discussed further below, no such circumstance exists here. For that reason and the additional reasons discussed below, the Court grants each Plaintiff's motion to confirm the arbitration award.

I.      **SUMMARY**

One of the principal questions in this case is whether claims relating to the Employee Retirement Income Security Act of 1974 ("ERISA") defined contribution plans must be pursued through the class action mechanism under Federal Rule of Civil Procedure 23(b)(1). Cases that suggest that ERISA pension fund claims must be pursued through a class action under Federal Rule of Civil Procedure 23(b)(1)(A) and 23(b)(1)(B) rely on the derivative nature of ERISA litigation. They reason that because the ERISA claim must be brought on behalf of the plan, any individual action would necessarily affect absent plan participants and subject defendants to an

inconsistent standard. *See* 2 Newberg on Class Actions § 4:21 (5th ed.), n.4 ("Given this nature of an ERISA claim which authorizes Plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief (and there is also a risk of inconsistent dispositions that would prejudice the Defendants)." (quotation marks and citation omitted)); *see also Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006) ("[A]ctions charging 'a breach of trust by . . . [a] fiduciary . . . affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust, are among the classic examples of Rule 23(b)(1)(B) class actions." (quotation marks and citations omitted)).

Indeed, in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), the Supreme Court held that such claims had to be brought collectively. However, since the above cases were decided, the Supreme Court has clarified that its decision in *Russell* was limited to defined benefit plans and did not apply to individuals bringing a representative ERISA claim on behalf of the plan for damages to their individual accounts. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) ("[O]ur references to the 'entire plan' in *Russell,* which accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context."). Nothing in the reasoning or language of *LaRue* suggests that the Supreme Court was limiting its ruling to cases where the individual claimant had a unique claim against a fiduciary. As the Seventh Circuit recently recognized, federal appellate courts overwhelmingly have found that "individualized arbitration [is not] inherently incompatible with ERISA." *Smith v. Board of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613, 622 (7th Cir. 2021).

Nonetheless, DST has argued that the arbitration awards at issue here cannot be confirmed because the arbitrator had no authority to enter an arbitration award in an individual action against DST for fiduciary breach. DST in effect argues that these claims must be pursued in a collective

class action pursuant to Federal Rule of Civil Procedure 23(b)(1)(A) and 23(b)(1)(B) to protect all class members from being adversely affected by piecemeal resolution of the fiduciary-breach claims and to protect DST from inconsistent decisions. However, the non-arbitrating class members in Ferguson were not adversely affected when the arbitration claimants and DST agreed to arbitrate. Some participants chose to arbitrate; other plan participants chose not to arbitrate; but DST insisted on arbitration until recently; and the Honorable Brian C. Wimes in *Ducharme* necessarily found that the arbitration clause at issue here covered claims for DST's fiduciary breach.[1]

---

[1] By dismissing Ducharme's individual and collective claims because he signed the arbitration agreement, Judge Wimes necessarily found that the arbitration agreement covered fiduciary breach claims against DST. If the arbitration agreement did not apply to the fiduciary breach claims, there would be no logical explanation for the dismissal of the claims. Moreover, the application of the arbitration agreement to the fiduciary breach claim was litigated by Ducharme and DST, and DST's position is reflected in Judge Wimes' ruling. *See Air Line Pilots Ass'n Int'l v. Trans States Airlines, LLC*, 638 F.3d 572, 579 (8th Cir. 2011) ("Under the doctrine of issue preclusion, also known as collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" (quotation marks and citations omitted)); *see also Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003) (noting that courts consider the following factors in determining whether to apply the doctrine of collateral estoppel: "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication," and, where the parties in the first and second litigation are not the same, whether the party against whom preclusion is asserted had a "full and fair opportunity to litigate" the issue).

In a subsequent case, Judge Wimes applied the first-filed rule to dismiss, in favor of *Ferguson*, a putative class action brought on behalf of plan participants in the Western District of Missouri. *See Ostrander v. DST Sys., Inc.*, No. 17-CV-00747-BCW, 2018 WL 10799300, at *3 (W.D. Mo. Feb. 2, 2018). However, the named plaintiffs in *Ferguson* and *Ostrander* were not parties to an arbitration agreement with DST. *Ostrander* therefore has no relevance to or impact on the legal import of *DuCharme*.

If the non-arbitration plaintiffs ultimately receive more or less in a class action, or if arbitration claimants receive more or less in arbitration, it will be a result of each party's choice. Likewise, if DST is subject to differing awards, it will be a result of DST's choice. Choice is the touchstone of the FAA. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) ("We have often observed that the Arbitration Act requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes . . . ." (quotation marks and citation omitted)); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("This text reflects the overarching principle that arbitration is a matter of contract. And consistent with that text, courts must rigorously enforce arbitration agreements according to their terms . . . . That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been overridden by a contrary congressional command."); *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013) ("Oxford chose arbitration, and it must now live with that choice."). Absent any basis for finding that an individual arbitration under these circumstances would adversely affect other plan participants, there is no basis for finding that the arbitrators in these cases exceeded their authority when they entered their awards in these individual, representative arbitrations based on the voluntary agreement by DST and the plan participant to arbitrate.

While claims on behalf of ERISA plans may be paradigmatic models for collective actions, *see* 2 Newberg on Class Actions § 4:21 (5th ed., June 2019 update), and indeed are likely to be an appropriate choice in many cases, that does not mean that every representative ERISA plan claim must be pursued collectively, particularly where the fiduciary has voluntarily agreed to individual arbitration. Nothing in the ERISA statute suggests otherwise. Absent some concrete and articulable evidence that the non-arbitrating plan members would be adversely affected by

7

individual arbitration awards, and considering DST's obvious forum-shopping to avoid the consequences of its choices, the Court sees no justification for ignoring individual dispute resolution choices. Indeed, a collective action under these circumstances could adversely affect the arbitration claimants who voluntarily agreed to arbitrate with DST, and that would seem inconsistent with the objectives of Federal Rule of Civil Procedure 23(b)(1). In contrast, this Court's decision sacrifices neither the objectives and language of ERISA, nor the objectives and language of the FAA. It also gives life to the doctrines of collateral estoppel and judicial estoppel, which are not to be cast aside merely because another court decides the same issue differently.

Finally, the Court has already exercised its authority and discretion to decide the cases on its docket in granting other arbitration claimants' confirmation requests, and those cases already are on appeal before the Eighth Circuit. *Ducharme* was the first case to address the application of the employment arbitration agreement to the DST fiduciary breach claim. While *Ferguson* was filed not long after *Ducharme*, the court in *Ferguson* did not address class certification or the applicability of the arbitration agreement to the DST fiduciary breach claim until August 2021. In the interim, the arbitration claimants relied on *Ducharme* and on DST's agreement to arbitrate their claims individually in the Western District of Missouri, as did the arbitrators who issued these awards in the Western District of Missouri. Almost all of the arbitration awards being confirmed here were entered before the class in *Ferguson* was certified, and all of the arbitration awards were the product of arbitrations begun before the class was certified. As the Eighth Circuit has recognized, the first-filed rule is subject to exceptions if there are compelling circumstances. *Nw. Airlines, Inc. v. Am. Airlines, Inc*., 989 F.2d 1002, 1006 (8th Cir. 1993) (noting that the rule "yields to the interests of justice, and will not be applied where a court finds compelling circumstances supporting its abrogation"). Under these circumstances, which are analogous to the considerations

that gave rise to the first-filed jurisprudence, the Court concludes that it has discretion to complete its ministerial duty to confirm these awards based on its understanding of the law in the Eighth Circuit and the unique connection these cases have to the Western District of Missouri.

This is so even though DST, by letter, has requested a stay of these proceedings because Judge Carter enjoined the arbitration claimants from litigating claims relating to the claims in *Ferguson*.  However, ruling on the pending motions to confirm arbitration awards will not violate the terms of that injunctive order, which does not purport to bind this Court.  In the interest of judicial efficiency, including the Court's obligation to manage its docket, and to ensure that the Eighth Circuit has the opportunity to consider all related cases together, the Court denies DST's request to indefinitely forbear from considering and ruling upon the motions to confirm that were filed before the injunctive order in *Ferguson* was issued.

It will be for a higher court or courts to ultimately resolve the question of whether the arbitrators in the Western District of Missouri exceeded their authority when they issued these awards and whether the voluntary agreements to arbitrate individually were void *ab initio* because only a collective resolution was permissible. The resolution of these issues may carry significant ramifications for the arbitrability of ERISA plan claims and therefore it is in the interest of all the parties, and the judicial system at large, that the issues be fully aired.

## II.    BACKGROUND

At all relevant times, Plaintiff was a participant, within the meaning of 29 U.S.C. § 1002(7), in DST's 401(k) Profit Sharing Plan (the "Plan").  DST, though incorporated in Delaware, has its principal place of business in Kansas City, Missouri.  DST is the sponsor, administrator, and designated fiduciary of the Plan under 29 U.S.C. §§ 1002 and 1102.

The underlying dispute arose from DST's alleged failure to monitor and ensure the

rebalancing of overly concentrated investments in the Plan. On January 13, 2017, Mr. James DuCharme, a participant in the Plan, filed a putative class action in the Western District of Missouri, seeking to recover damages on behalf of the Plan for DST's alleged wrongdoing. On February 22, 2017, DST filed a motion to compel arbitration and to dismiss Mr. DuCharme's lawsuit. On June 23, 2017, the Honorable Brian C. Wimes granted DST's motion to dismiss the *DuCharme* litigation, finding that the Arbitration Agreement was "valid" and that "Ducharme's claims for breach of fiduciary duty f[e]ll within the Arbitration Agreement's scope." *Ducharme v. DST Sys.*, Inc., No. 17-CV-0022-BCW, 2017 WL 7795123, at *1 (W.D. Mo. June 23, 2017).

On June 18, 2018, DST sent a notice to all Plan participants bound by the Arbitration Agreement explaining that a former employee had initiated an arbitration relating to the Plan and advising each participant that he or she "may initiate an individual arbitration proceeding under the Arbitration Program by submitting a written request" to DST. (DST Notice Regarding Right to Assert Claim dated June 18, 2018.)

Hundreds of Plan participants initiated arbitration proceedings through the American Arbitration Association ("AAA"). To date, 554 participants or beneficiaries have initiated arbitration proceedings. During the past three years, the arbitrations have progressed—including through discovery, depositions, motion practice, merits hearings, or simply settlements. To date, the claims of at least 342 claimants have been tried; at least 214 claimants have received awards in their favor; and approximately 60 other claimants are awaiting awards. DST has appealed some of the awards against it through the arbitration process. All of the arbitration hearings at issue, albeit virtual, were conducted in Missouri.

The Western District of Missouri confirmed at least five of the arbitration awards earlier this year. *See Murphy v. DST Sys., Inc.*, No. 21-MC-00174-BCW (W.D.Mo.); *O'Brien v. DST*

*Sys.*, *Inc.*, No. 21-MC-9008-BCW (W.D.Mo.); *Quast v. DST Sys., Inc.*, No. 21-MC-9009-BCW (W.D.Mo.); *Mayberry v. DST Sys., Inc.*, No. 21-MC-09007-BCW (W.D.Mo.); *Keeton v. DST Sys., Inc.*, No. 21-MC-09006-BCW (W.D.Mo.); *Parrott v. DST Sys., Inc.*, No. 21-mc-09012-NKL (W.D.Mo.). In at least one of those cases, DST expressly stated just months ago that it "d[id] not oppose the confirmation of the Arbitration Award . . . ." *Parrot*, No. 21-mc-09012-NKL (W.D.Mo.), Doc. 3 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award).

In September 2017, months after the *DuCharme* case was dismissed upon DST's motion, a participant in the Plan brought a putative class action in the Southern District of New York alleging breach of fiduciary duty against DST and Ruane Cuniff & Goldfarb Inc., the investment manager to which DST had delegated investment management responsibilities, as well as the Plan's Advisory Committee and the Compensation Committee of the Board of Directors of DST. *Ferguson* v. *Ruane Cuniff & Goldfarb Inc.*, No. 17-cv-06685 (S.D.N.Y.). The plaintiffs in *Ferguson* filed a motion for class certification in April 2020. Counsel for the Plaintiff in this case filed a memorandum of law opposing the motion for class certification on behalf of Plaintiff and hundreds of other similarly situated arbitration claimants (the "Arbitration Claimants").

On March 4, 2021, while the motion for class certification in *Ferguson* was pending, the Second Circuit reversed a district court decision compelling arbitration pursuant to the same DST Arbitration Agreement at issue here. *See Cooper* v. *Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021). The Second Circuit held that DST's Arbitration Agreement did not cover ERISA fiduciary duty claims because the Arbitration Agreement covered only employment-related disputes, not Plan-related disputes. *Id.* at 183–84. The Second Circuit also suggested that individual claims would not be permissible in a suit asserting a breach of DST's fiduciary duty to the Plan because, based on one of its prior opinions, such claims must be brought on a

representative basis. DST was not a party to that lawsuit.

On March 8, 2021, the *Ferguson* court denied plaintiffs' class certification motion without prejudice and ordered additional briefing addressing *Cooper*. *Ferguson*, No. 17-cv-06685 (S.D.N.Y.), Doc. 296 (Order Dated March 8, 2021). The *Ferguson* plaintiffs thereafter renewed their class certification motion. DST filed a brief supporting the class certification motion. *See Ferguson*, No. 17-cv-06685 (S.D.N.Y.), Doc. 306 (DST's Response to Plaintiffs' Renewed Motion for Class Certification), p. 22 ("The Court should grant Plaintiffs' renewed motion for class certification."). Counsel for the Arbitration Claimants, including Plaintiff here, filed an additional brief in the *Ferguson* case opposing class certification, arguing that DST had agreed to arbitrate the claims; that the Arbitration Claimants had a right to arbitrate their claims; that the Arbitration Claimants should be permitted to opt out of any class; that Judge Wimes' decisions in *DuCharme* precluded certification of a mandatory class; and that the Southern District of New York lacked personal jurisdiction over the Arbitration Claimants. *Ferguson*, No. 17-cv-06685 (S.D.N.Y.), Doc. 271 (Memorandum of Law on Behalf of Arbitration Claimants in Opposition to *Ferguson* Plaintiffs' Motion for Preliminary Approval of Class Action Settlement).

On August 17, 2021 the *Ferguson* court certified a Rule 23(b)(1) mandatory class that includes Plaintiff. *Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-CV-6685, 2021 WL 3667979 (S.D.N.Y. Aug. 17, 2021). The *Ferguson* court stated, "[w]hile the Arbitration Claimants argue that they have a right to arbitrate, the Second Circuit as well as this Court has found that the claims at issue here are not covered by the arbitration agreement." *Id.* at *7. The class certification decision in *Ferguson* also noted secondarily that Second Circuit precedent requires parties suing on behalf of an ERISA plan "to demonstrate their suitability to serve as representatives of the interests of other plan stakeholders," and it was not clear "how an employee can bring an ERISA

fiduciary claim that satisfies [the *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006)] adequacy requirement, while concurrently complying with the agreement." *Id.* at *4 (quotation marks omitted).

On August 23, 2021, DST moved the *Ferguson* court for a temporary restraining order and preliminary injunction to prohibit the Arbitration Claimants from prosecuting the arbitrations and related court proceedings in spite of the class certification order. Also, on August 30, 2021, the Arbitration Claimants, including Plaintiff, filed a petition in the Second Circuit pursuant to Rule 23(f) seeking discretionary review of the class certification order.

On August 31, 2021, the *Ferguson* court denied DST's motion for a temporary restraining order, but it ordered the Arbitration Claimants to show cause as to why they should not be enjoined from prosecuting this or other actions relating to the class's claims. The Arbitration Claimants thereafter filed papers arguing against the proposed injunction, and DST filed papers in response. On November 18, 2021 the *Ferguson* court issued an order enjoining all members of the certified class, including the Arbitration Claimants, from "instituting new actions or litigating in arbitration or other proceedings against the DST Defendants matters arising out of or relating to the facts or transactions alleged in the *Ferguson* amended complaint." Each of the motions to compel arbitration addressed in this Order had been filed prior to the issuance of that injunction.

## III.   DISCUSSION

### A.   Whether the Court Has Jurisdiction

DST does not—and cannot reasonably—suggest that this Court lacks jurisdiction over the parties before it. Plaintiff was employed by DST in Kansas City, Missouri, and DST's principal place of business is in Kansas City, Missouri. The Arbitration Agreement states that the "arbitration hearing shall be held in the county of the Associate's principal place of

employment . . . unless another location is agreed to by the parties." The arbitration hearing was conducted in Jackson County, Missouri. The Agreement provides that, "[a]fter the conclusion of the arbitration process, . . . the Associate may file a legal action . . . to enforce, vacate, modify, and/or appeal the final decision and award based on any available legal ground in the federal district court with jurisdiction over the county in which the hearing was held." DST Output Arbitration Program and Agreement with Associate Opt Out Right.

Moreover, the AAA's Employment Rules—which the arbitration agreement provides shall apply—specify that the "[p]arties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction." AAA Employment Rules, available at https://www.adr.org/sites/default/files/Employment%20Rules.pdf (last accessed September 23, 2021), R. 42.c.

This Court clearly has jurisdiction over this action.

### B. The FAA's Requirement that the Court Confirm Arbitration Awards in the Ordinary Course

"Section 9 of the FAA provides that federal courts 'must grant' an order confirming an arbitration award 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA].'" *UHC Mgmt. Co., Inc. v. Computer Sciences Corp.*, 148 F.3d 992, 997 (8th Cir. 1998) (emphasis added); *see also* 9 U.S.C. § 9 ("If the parties . . . have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.") (emphasis added).

14

The Supreme Court has held that "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

"Congress did not authorize de novo review of [an arbitration] award on its merits; it commanded that when the exceptions do not apply, a federal court has no choice but to confirm." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008); *see also Med. Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010) ("[A]n arbitral award may be vacated only for the reasons enumerated in the FAA.").

The "grounds recognized by the FAA" for vacating an award are "corruption, fraud, partiality or an abuse of power . . . ." *Id.* Here, DST has not argued that corruption, fraud, or partiality affected the award. Absent a finding that the arbitrators abused their power, then, the Court is compelled to confirm the award.

## C. DST's Argument that the ERISA Claims Cannot Be Brought Individually

DST argues that ERISA § 502(a) claims cannot be brought in individual arbitrations. Insofar as this argument does not involve a suggestion that the arbitrators exceeded their powers, it should have been directed to, and resolved by, the arbitrators.

Insofar as DST suggests that the arbitrators exceeded their authority because the claims at issue were not arbitrable, the Court is not persuaded by DST's argument. The Supreme Court has held that, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). Additionally, the Eighth Circuit has "f[ou]nd nothing . . . demonstrating

Congress intended to prohibit arbitration of ERISA claims." *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc*., 847 F.2d 475, 478 (8th Cir. 1988).

DST argues that *Arnulfo P. Sulit* involved claims between the plan and its broker and did not address "a plan participant's ability to individually arbitrate ERISA fiduciary duty claims." But in *Arnulfo*, the principal of the corporation brought claims in his own name, as well as that of his corporation, in addition to the claim on behalf of the employee benefit plans. The Eighth Circuit found that "the parties' agreements to arbitrate ERISA claims are enforceable in accord with the explicit provisions of the Arbitration Act." *Id.* at 477. The Eighth Circuit did not distinguish between the employee benefit plans' claims and the other plaintiffs' claims in determining that arbitration was appropriate. Instead, in compelling arbitration of even the individuals' claims, the Eighth Circuit expressly stated, "we perceive no inherent conflict between arbitration of ERISA claims and the statute's purposes that would undermine the suitability of arbitration as a means of enforcing ERISA rights." *Id.* at 479.

The Ninth Circuit has expressly noted that "every circuit to consider the question has held [that] ERISA contains no congressional command against arbitration, [and] therefore an agreement to arbitrate ERISA claims is generally enforceable." *Dorman*, 780 F. App'x at 513–14.[2] The Supreme Court's opinion in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018), further supports the conclusion that where, as in the ERISA provisions relevant here, there is no language indicating that statutory claims are not arbitrable, an arbitration agreement "must be enforced as

---

[2] DST claims that in *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 190 (W.D. Mo. 2009), this Court rejected the reading of *LaRue* adopted in *Dorman*. However, this Court simply held in *Jones* that "*LaRue* does not eliminate the possibility of § 502(a)(2) class actions." *Id.* The Court did not suggest that individual causes of action are impermissible under *LaRue*; to the contrary, the Court recognized that "*LaRue* . . . expanded the relief available under § 502(a)(2), so that recovery can now be had when a participant demonstrates that fiduciary misconduct affected his individual account." *Id.* (quoting *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 108–09 (N.D. Cal. 2008)).

16

written."

Finally, even if DST is correct that an ERISA claim must be brought in a collective action, as discussed below, DST is estopped from benefiting from that rule because it previously represented to the courts, arbitrators and the Arbitration Claimants that the ERISA claims at issue here cannot be brought in a collective action.

### D. Judicial Estoppel

Even if this were not a straightforward matter of confirming an arbitration award where there is no evidence of corruption, fraud, partiality, or abuse of power, the doctrine of judicial estoppel alone would warrant confirming the award.

"[A] party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" *Scudder v. Dolgencorp, LLC*, 900 F.3d 1000, 1006 (8th Cir. 2018) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, (2001)). Therefore, the doctrine of judicial estoppel "prevents a party who 'assumes a certain position in a legal proceeding, and succeeds in maintaining that position,' from later 'assum[ing] a contrary position.'" *Scudder*, 900 F.3d at 1006 (quoting *New Hampshire*, 532 U.S. at 749; citing 18 Charles Alan Wright, Arthur Edward Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4477, p. 782 (1981)).

The Court considers the following factors in determining whether judicial estoppel applies:

(1) whether "a party's later position is clearly inconsistent with its earlier position," (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled," and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Scudder*, 900 F.3d at 1006 (quoting *New Hampshire*, 532 U.S. at 750-51). The Court evaluates

these factors in turn.

1. **Whether DST's Position Now is Clearly Inconsistent with the Position It Previously Adopted**

DST's position in this case now is clearly inconsistent with the position it adopted in 2017 in *DuCharme*. In *DuCharme*, DST moved the Court "to compel Mr. Ducharme to arbitrate his ERISA claims with DST on an individual basis in accordance with the terms of the Arbitration Program and Agreement." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 27 (DST's Motion to Compel Arbitration and to Dismiss), p. 1. DST argued that individual arbitration was required "because (1) Mr. Ducharme entered into a valid agreement to arbitrate with DST and (2) his breach of fiduciary duty claims under ERISA fall within the scope of that agreement." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 28 (Suggestions in Support of DST's Motion to Compel Arbitration and to Dismiss), p. 6. DST insisted that the Profit Sharing Plan "incorporates the terms of DST's Arbitration Agreement into the Plan, and thereby explicitly binds the Plan to the terms of that Agreement." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 47 (DST's Response to Plaintiff's Sur-Reply in Support of Motion to Compel Arbitration and to Dismiss), p. 2; *see also DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 39 (DST's Reply Suggestions in Support of Motion to Compel and to Dismiss), p. 3 (arguing that "[t]he Plan . . . expressly provides for arbitration" and that "the Plan makes clear that the scope of the Arbitration Agreement covers claims arising out of or related to the Plan—such as the claims Mr. DuCharme seeks to assert"); *id.* p. 6 (arguing that claims for breach of fiduciary duty "are explicitly covered by the language of the Plan" and "subject to mandatory arbitration and class action waiver as provided under DST's Arbitration Policy" (quotation marks omitted)). Indeed, DST insisted that "neither the Arbitration Agreement nor the Amendment prohibits Mr. Ducharme or any other party to the Arbitration Agreement from arbitrating a breach of fiduciary duty claim in connection with purported losses to their individual

accounts." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 47 (DST's Response to Plaintiff's Sur-Reply in Support of Motion to Compel Arbitration and to Dismiss), p. 3.

After the *DuCharme* litigation was dismissed upon DST's motion, and after the *Ferguson* case was filed in New York, DST induced reliance by Plan participants on the position it had taken in *DuCharme* by sending a notice to each advising that they could "initiate an individual arbitration proceeding under the Arbitration Program by submitting a written request to the DST Systems, Inc., Legal Department" in Kansas City, Missouri. (DST Notice Regarding Right to Assert Claim dated June 18, 2018.)

In the arbitration proceedings themselves, DST acknowledged the arbitrability of each Plan participant's claim. Every arbitration is initiated upon DST's submission of a "Joint Submission for Arbitration" that DST and each claimant signed. *See, e.g.*, *Hursh v. DST Sys., Inc.*, No. 01-19-0001-9621 (AAA), Joint Submission for Arbitration. This document itself constituted an agreement to arbitrate. *See Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998) ("Under the Federal Arbitration Act, the Submission Agreement, being an 'agreement in writing to submit to arbitration an existing controversy,' is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'") (quoting 9 U.S.C. § 2); *Fisher v. Wheat First Sec., Inc.*, 62 F. App'x 472, 475 (4th Cir. 2003) ("The Uniform Submission Agreement completed and signed by Fisher is a valid and binding contract that has the force of modifying earlier agreements.").

In the arbitration of *James DuCharme v. DST Systems, Inc., et al.*, the parties agreed that "[a]ll claims, counterclaims and defenses asserted by the Parties are within the jurisdiction of the Panel and arbitrable, and there are no preconditions that must be satisfied before proceeding with the Arbitration." *DuCharme v. DST Sys., Inc.*, No. 01-18-0003-0453 (AAA), Case Management

and Scheduling Order, Order No. 2, ¶ 3.  In another proceeding, the arbitrator stated that his jurisdiction over the matter "is based on the parties' agreement to arbitrate" and that there "is no dispute that the parties' dispute is within the scope of the parties' agreement to arbitrate." *McKown v. DST Sys., Inc.*, No. 01-19-0001-9672 (AAA), Initial Case Management Order, p. 2.  In yet another proceeding, the arbitrator noted that "[n]o party challenged either the arbitrability of any of the claims or the jurisdiction of the Arbitrator." *Leineke v. DST Sys., Inc.*, No. 01-18-0003-0421 (AAA), Report of Preliminary Hearing and Management Conference Order No. One, p. 2.[3]

Furthermore, even as recently as a few months ago, DST agreed to the entry of an order granting a motion to confirm an attorney's fee award in connection with an arbitration.  *Parrot*, No. 21-mc-09012-NKL, Doc. 3 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award).[4]

In this proceeding, however, DST has adopted the contrary position.  In direct contradiction

---

[3] DST argues that it did not consent to arbitration because, in the Joint Submission for Arbitration, DST reserved "all arguments and defenses in connection with the Demand."  Even putting aside the fact that DST takes the quoted language out of context, this vague, general reservation of rights, submitted in the arbitration forum to the arbitrator, cannot be deemed an objection to the arbitration itself.  In any event, it does not erase DST's prior and subsequent efforts to compel and invite arbitration by Plan participants and to participate willingly in those arbitrations.

DST's argument that it later objected to proceeding in arbitration while the Second Circuit resolved arbitrability in *Cooper* similarly fails.  The document to which DST points notes that DST had already submitted the Joint Submission for Arbitration for 315 claimants.  Having compelled, then invited, then invoked arbitration, and having participated fully in the process for significant time, DST cannot legitimately claim now that it objected to proceeding in arbitration.

[4] DST notes that *Parrot* "did not consider any dispute over arbitrability" and that the Court merely "granted an *unopposed* motion to confirm an attorney's fee award," but that is precisely the point: by not opposing the motion, DST acknowledged that confirmation of the arbitration award was appropriate.  In fact, DST actually submitted its own proposed order confirming the arbitration award.  *See Parrott*, No. 21-mc-9012-NKL (W.D.Mo.), Doc. 3 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award) ("DST does not oppose the confirmation of the Arbitration Award and respectfully submits that the accompanying proposed order in the form of Exhibit A is appropriate to confirm that award.").

of its original position that a Plan participant should "arbitrate his ERISA claims with DST on an individual basis in accordance with the terms of the Arbitration Program and Agreement," DST now argues that the reason for "certify[ing] mandatory classes in ERISA fiduciary duty actions is . . . to ensure that all parties and all plan participants are treated equitably in resolving derivative claims that belong to the plan as a whole, not any individual plan participant." DST's Suggestions in Opposition to Plaintiff's Motion to Confirm Arbitration Award, p. 2; *see also id.* pp. 3-4 ("Courts nationwide, including the Southern District of New York and this Court, have recognized repeatedly that ERISA fiduciary duty claims cannot be litigated on an individual basis and must instead be brought in a representative capacity on behalf of a plan and all its participants. The arbitration of the individual claims here violated those basic ERISA principles."); *id.* p. 14 ("Courts nationwide, including this Court, have held that such claims cannot be litigated individually and must instead be brought on behalf of a retirement plan as a whole in a representative capacity.").

DST attempts to refute the suggestion that its current and former positions are inconsistent by pointing out that (1) "the *Ferguson* plaintiffs, *not* DST, moved to certify the class," and (2) "the Second Circuit resolved that Arbitration Claimants' claims are not arbitrable in *Cooper*—in which DST was not even a party." Even putting aside the fact that DST submitted a brief in support of the plaintiffs' class certification motion in *Ferguson*, these are distinctions without a difference. The facts that DST did not initiate class certification in *Ferguson* and was not a party in *Cooper* are irrelevant to the question of whether DST has adopted inconsistent positions in adjudicatory forums—and there can be no reasonable dispute that it has.

Insofar as DST argues that an intervening change in the law justifies its about-face, the argument is unconvincing. Well before the 2021 Second Circuit decision in *Cooper* concluding that a DST Plan participant's ERISA claims were not arbitrable, and the subsequent class-

certification decision in *Ferguson*, DST had changed its position regarding arbitration. For example, on July 10, 2020, DST sought a temporary restraining order and preliminary injunction to prevent arbitrations by any members of the putative class. *Ferguson*, No. 17-cv-06685 (S.D.N.Y.), Doc. 160 (Proposed Order to Show Cause for an Order for Preliminary Injunction and Temporary Restraining Order). The Second Circuit's decision in *Cooper* was not issued until eight months later.

Even after the Second Circuit decision in *Cooper* was issued, DST consented to the entry of orders confirming arbitration awards in other cases involving the same type of claim. *See Murphy v. DST Sys., Inc.*, No. 21-MC-00174-BCW (W.D.Mo.), Doc. 8 (DST's Response to Plaintiff's Motion to Confirm Arbitration Award) ("DST does not oppose the confirmation of the Arbitration Award . . . ."); *Parrott v. DST Sys., Inc.*, No. 21-mc-09012-NKL (W.D.Mo.), Doc. 3 (same).

Moreover, *Cooper* did not change Second Circuit law regarding whether ERISA claims like those in this case could be brought individually: as *Cooper* explains, the rule at issue was articulated in *Coan*, which was decided in 2006—many years before DST sought to compel arbitration in *DuCharme*. *See Cooper*, 990 F.3d at 184 ("In *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), we construed ERISA § 502(a)(2) to require parties suing on behalf of a plan to demonstrate their suitability to serve as representatives of the interests of other plan stakeholders. We explained: '[T]he representative nature of the section 502(a)(2) right of action implies that plan participants must employ procedures to protect effectively the interests they purport to represent.'").

Furthermore, DST has taken inconsistent positions in the Western District of Missouri— the district in which it has its principal place of business, in which Plaintiff was employed, and in

which the arbitrations occurred. DST has not presented, and the Court is not aware of, any authority to suggest that a change in Second Circuit law justifies DST's abrupt reversal in this district. The only Eighth Circuit pronouncement with respect to the arbitrability of ERISA claims is that there is "no inherent conflict between the arbitration of ERISA claims and the statute's purposes that would undermine the suitability of arbitration as a means of enforcing ERISA rights." *Arnulfo P. Sulit*, 847 F.2d at 479. In fact, DST cited *Arnulfo P. Sulit* in arguing for dismissal of the *DuCharme* case. The Court therefore cannot find that DST's contradictory positions were justified based on any change in the law.

In sum, there can be no reasonable dispute that DST has adopted inconsistent positions in the litigation and arbitration proceedings.

2. **Whether DST Succeeded in Persuading a Court to Accept Its Earlier Position, such that Accepting an Inconsistent Position in this Proceeding Would Create the Perception that Either the First or the Second Court Was Misled**

There is no doubt that DST persuaded Judge Wimes to accept its position that Plan participants who were parties to the arbitration agreement were required to arbitrate their claims. In dismissing the complaint in *DuCharme*, Judge Wimes expressly held that "the Arbitration Agreement at issue is valid and Ducharme's claims for breach of fiduciary duty fall within the Arbitration Agreement's scope." *Ducharme*, 2017 WL 7795123, at *1. Further, in the arbitrations themselves, DST conceded that the claims were arbitrable.

DST argues that the fact that it sought to stay select arbitrations shows that it did not concede the arbitrability of the claims. However, seeking a *stay* of an arbitration in the arbitration proceeding does not suggest that DST denied the *arbitrability* of the claims. DST has not suggested that it objected to the arbitrability of any claim in the arbitration proceedings at issue.

If the Court were to accept DST's new argument that the claims at issue in the Arbitration

Claimants' arbitration proceedings—the same type of claim that was at issue in the *DuCharme* litigation—are not arbitrable, then it will appear that either Judge Wimes or this Court was mistaken as to the enforceability of the arbitration agreement or whether the ERISA claims at issue may be brought individually. That is precisely the kind of result that the doctrine of judicial estoppel is designed to prevent.

### 3. Whether DST Would Derive an Unfair Advantage or Impose an Unfair Detriment on Plaintiff If Not Estopped

It is clear that, if the Court were to accept the argument that DST now makes, Plaintiff would be unfairly prejudiced. Not only did DST seek and procure the dismissal of the *DuCharme* litigation on the ground that the claims therein were subject to mandatory arbitration, but DST also sent letters to all the Plan Participants advising that they could arbitrate disputes relating to the Plan. Now that hundreds of Plan Participants have accepted DST's offer to arbitrate, and secured awards after engaging in good faith, perhaps for years, in the arbitration process, it would be patently unfair to permit DST to revoke its consent to arbitration, vacate the arbitration awards, and require the Arbitration Claimants to start over.

### 4. Whether Judicial Estoppel Applies

The foregoing analysis establishes that judicial estoppel applies. *See Hicks v. Bank of Am., N.A.*, 218 F. App'x 739, 746 (10th Cir. 2007) (finding that where a party "vigorously participated in the arbitration," including by "joining in [a] motion to stay [proceedings in a district court] pending completion of the arbitration" and arguing that "the arbitration clause . . . clearly encompassed all of the issues and claims . . . asserted," it had "waived its objection to arbitration and [wa]s estopped from arguing that the arbitrator lacked personal jurisdiction to enter an award against it").

DST argues that inconsistent results in arbitration—the fact that some claimants in the arbitrations received less money than others, while some received none at all—suggests unfairness, and that the only fair option is a uniform recovery through the *Ferguson* class action. But the possibility of unfairness to those who exercised their right to arbitrate and did not recover does not warrant stripping arbitral awards from those who did. To the contrary, holding the parties to the benefit of their bargain—the outcomes obtained in arbitration—is the best way to ensure fairness and to effectuate the principles underlying the FAA. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (stating that "the first principle that underscores all of our arbitration decisions [is]: [a]rbitration is strictly 'a matter of consent'") (quotation marks and citation omitted). It falls to courts and arbitrators to give effect to these contractual decisions, keeping in mind the purpose of the exercise: to enforce the expressed intent of the parties. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

DST's *post hoc* suggestion that, despite its initial demand for arbitration in the Western District of Missouri and its subsequent invitation to Plan participants to initiate arbitration proceedings, this Court should sweep aside final arbitration awards in hundreds of cases is anathema. *See Hicks v. Cadle,* 436 F. App'x 874, 879 (10th Cir. 2011) ("[I]t would be a perverse understanding of the concept of consent to hold that a party has not consented to arbitration that it *voluntarily sought.* Judicial estoppel does not override consent; it enforces past consent by preventing tactical after-the-fact retraction." (emphasis in original)); *Lewis v. Cir. City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007) ("[M]any courts have held that, absent an explicit statement objecting to the arbitrability of the dispute, a party cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." (quotation marks omitted; citing cases)).

As another federal court held when a party argued that the arbitrator lacked jurisdiction to render the award against it, "[s]uch crass manipulation of the legal process constitutes an insult to the integrity of the judicial system and fully warrants invocation of the doctrine of judicial estoppel." *Data Mountain Sols., Inc. v. Giordano*, 680 F. Supp. 2d 110, 128 (D.D.C. 2010). The "hypocrisy" of "wish[ing] to resort to a class-wide lawsuit, the very device it [originally] denied to the workers, to avoid its duty to arbitrate . . . will not be blessed, at least by this order." *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2020).

Given (1) the Supreme Court's expansive language about the importance of arbitral consent; (2) DST's affirmative representations to the courts, to the arbitrators, and to the Plan Participants that these fiduciary breach claims had to be arbitrated; and (3) DST's consenting, repeatedly, to arbitrate the claims, the Court finds that DST is judicially estopped in this Court from asserting that the fiduciary breach claims at issue are not arbitrable.

DST was not dragged into arbitration against its will. It initiated these arbitrations voluntarily, whether its consent was manifested in the terms of the original arbitration agreement found valid in *DuCharme* or by inviting the Arbitration Claimants to arbitrate and then participating fully in the arbitrations. The only thing that would be unfair would be to let DST escape the consequences of the arbitration proceedings in which it voluntarily participated because they did not turn out as DST hoped they would.

### E. Whether the Class Certification Order in *Ferguson* Should Affect the Court's Decision Regarding the Arbitration Award

DST argues that the class certification order in *Ferguson* enjoins litigation of the claims that are the subject of the class action, citing *In re Federal Skywalk Cases*, 680 F.2d 1175, 1180 (8th Cir. 1982). The language cited by DST from *Federal Skywalk* is taken out of context. While that decision does state "[i]t is true that parties to a mandatory class are not free to initiate actions

in other courts to litigate class certified issues," the very next sentence states, "However, in the present case the objectors had commenced their state court actions before the motion for class certification had been filed in district court." *Fed. Skywalk*, 680 F.2d at 1180. In *Federal Skywalk*, the Eighth Circuit actually *vacated* the class certification order. *Id.* at 1183. In doing so, the Eighth Circuit distinguished the class certification order before it, which had purported to enjoin "pending . . . actions," from other cases in which permissible injunctions were "against subsequent . . . actions." *Id.* at 1182. Thus, insofar as *Federal Skywalk* is relevant, it suggests that a class-certification order that interferes with pending proceedings may be improper.

Here, Plaintiff and DST initiated the arbitrations before the class was certified. Indeed, many Arbitration Claimants' claims were already *resolved* before the class was certified. In moving to confirm the arbitration award, Plaintiff is merely seeking the equivalent of a formal judgment on a matter in which Plaintiff already has prevailed. *See Van Horn v. Van Horn*, 393 F. Supp. 2d 730, 740 (N.D. Iowa 2005) ("'The confirmation of an arbitration award converts the final arbitration award into the judgment of the court.'" (quoting *Irving R. Boody & Co. v. Win Holdings Int'l, Inc.*, 213 F.Supp.2d 378, 380 (S.D.N.Y. 2002)). A court action to confirm the arbitration award is merely the culmination—not the commencement—of the adjudicatory process.

DST also argues that the Court simply should defer to the Southern District of New York with respect to Plaintiff's claims because Plaintiff is a member of the class certified in *Ferguson* and *Ferguson* was "first filed," so confirming the arbitral award in this case would interfere with the Ferguson court's jurisdiction over Plaintiff's claims. However, Plaintiff's claims have already been arbitrated to conclusion within this district.

The ability to rely on the finality of a judgment is a central tenet in the judicial system. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 n.8 (11th Cir. 1988) (noting "the strong

policy favoring the finality of awards and judgments" (citing, *inter alia*, *Newark Stereotypers'*
*Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 598 (3d Cir. 1968)); *see Wellons, Inc.*
*v. T.E. Ibberson Co.*, 869 F.2d 1166, 1169 (8th Cir. 1989) ("[I]it is clear that an arbitration award
may operate as a final adjudication for the purposes of collateral estoppel."). DST has presented
no compelling reason to overturn this fundamental principle in this case.

DST's argument that the Court should not countenance Plaintiff's motion because it is a
collateral attack on the *Ferguson* class certification order is unpersuasive. First, the Court's
resolution of Plaintiff's motion cannot be a collateral attack on the class certification order in
*Ferguson* because this Court is not altering, and indeed cannot alter, a judgment entered by another
district court. Second, this Court is merely granting Plaintiff's Motion for Confirmation, which,
under the FAA and the facts presented here, is effectively a ministerial task. Further, the Court
simply is ensuring that DST does not escape the consequences of the legal position it originally
adopted in the Western District of Missouri. The Southern District of New York has not addressed
these issues.

To the extent that the Court's order in this case might create a conflict in relation to an
order of the Southern District of New York, such conflict will be the product of DST's blatantly
contradictory positions, not any judicial error.

Insofar as DST may be concerned about the potential that the Arbitration Claimants will
recover twice for one injury, it may seek relief in the class action by, for instance, requesting that
any award that the *Ferguson* plaintiffs secure on behalf of the Plan be calculated or distributed in
a manner that accounts for any overlap in the claims. *See, e.g., DeLoach v. Philip Morris*
*Companies, Inc.*, 206 F.R.D. 551, 566–67 (M.D. N.C. 2002) (noting, in rejecting defendant's
contention that individualized damages calculations precluded class certification, that a court can

appoint a special master or magistrate to "preside over individual damage proceedings"); *Augustin v. Jablonsky*, 819 F. Supp. 2d 153, 174 (E.D.N.Y. 2011) (concluding that "claims for class members' emotional distress damages must be disposed of an individual basis"); *Hilao v. Est. of Marcos*, 103 F.3d 767, 782 (9th Cir. 1996) (relying on statistical sampling and a special master to calculate damage awards for three different subclasses of plaintiffs). Such a procedure could also address DST's concern that some arbitration claimants were not given a large enough award in arbitration.

### F. DST's Concern About Plaintiff's Counsel's Expenses

Finally, DST argues that Plaintiff's counsel impermissibly seeks to recover multiple times for the same out-of-pocket costs, despite representing to every arbitrator that they would not recover the same expenses more than once. However, the issue does not appear ripe for court intervention. Plaintiff's counsel has represented that, as they have agreed multiple times, they will work with DST to ensure that they recover no more than 100% of their costs. DST complains that Plaintiff's counsel has not explained how such a promise may be enforced after judgment is entered. However, insofar as Plaintiff's counsel breaches an agreement, of course, traditional contract remedies are available, in addition to remedies available under federal law and rules for purported misrepresentations by attorneys.

In any event, this issue does not appear to affect the integrity of the award itself. Furthermore, DST has not shown in what arbitration any alleged double recovery has occurred, or in what amount. Therefore, there is insufficient evidence before the Court to warrant delaying or refusing entry of a judgment confirming the arbitration award on this basis.

### IV. CONCLUSION

For the reasons discussed above, Plaintiff's motion to confirm the arbitration award (Doc.

1) is GRANTED.  The Clerk of the Court is directed to enter judgment in each Plaintiff's favor against DST in the amounts listed below, with post-judgment interest.

| Case Caption | Case No. | Amount of Award |
| --- | --- | --- |
| McManus Newtal v. DST Systems, Inc. | 4:21-09185 | $8,194.02, plus attorney's fees of $247,306.93, statutory costs of $11,949.88, and post-judgment interest |
| Alden v. DST Systems, Inc. | 4:21-09186 | $24,659.60, plus attorney's fees of $250,769.43, statutory costs of $11,949.88, and post-judgment interest |
| Spellman v. DST Systems, Inc. | 4:21-09188 | $3,153.04, plus attorney's fees of $8,180.00, costs of $2,987.00, out-of-pocket expenses of $1,517.00 and post-judgment interest |
| Graybeal v. DST Systems, Inc. | 4:21-09189 | $39,193.00, attorney's fees of $105,510.00, costs of $12,277.00, out-of-pocket expenses of $20,000.00, and post-judgment interest |
| Kenney v. DST Systems, Inc. | 4:21-09190 | $11,143.90, plus attorney's fees of $15,340.92, out of pocket expenses of $892.54, statutory costs of $11,299.05, and post-judgment interest |
| Rudolph v. DST Systems, Inc. | 4:21-09191 | $3,282.95, plus attorney's fees of $8,575.00, statutory costs of $2,987.00, other costs of $1,517, and post-judgment interest |
| Pichelman Goforth v. DST Systems, Inc. | 4:21-09192 | $45,558.89 plus attorney's fees of $205,840.10, out of pocket expenses of |

| | | $74,332.58, statutory costs of $10,928.90, and post-judgment interest |
|---|---|---|
| McCord v. DST Systems, Inc. | 4:21-09193 | $22,226.63, plus attorney's fees of $296,019.48, statutory costs of $11,304.15, and pre-judgment interest |
| Riley v. DST Systems, Inc | 4:21-09194 | $72,364.00, plus attorney's fees of $222,122.80, out-of-pocket expenses of $74,293.56, and post-judgment interest |
| Singh v. DST Systems, Inc. | 4:21-09195 | $13,873.00, plus attorney's fees of $103,505.00, statutory costs of $12,277.00, plus expenses of $20,000.00, and post-judgment interest. |
| Sabin v. DST Systems, Inc. | 4:21-09196 | $95,020.40, plus attorney's fees $55,968.40, costs of $11,136.40 and pre-judgment interest. |
| Stevens v. DST Systems, Inc. | 4:21-09197 | $79,278.36, plus attorney's fees in the amount of $167,806.30, plus statutory costs of $48,448.83 |
| Sarette v. DST Systems, Inc. | 4:21-09198 | $15,857.22, plus attorney's fees of $99,560.00, statutory costs of $10,928.90, and post-judgment interest. |

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  December 21, 2021
Jefferson City, Missouri